[No. 3281.]

## Jack Hughes v. The State.

1. Continuance — Practice.— The truth and merit of an application for a continuance, as well as the diligence used, may be tested by its own allegations, and anterior to the trial the application must of necessity be determined upon the facts then existent and known. Therefore, in avoidance of exceptions reserved to the overruling of an application for a continuance anterior to the trial, matters developed at the trial are of no avail as reasons to vindicate the ruling. Otherwise, when the application comes again before the court as cause assigned in the motion for a new trial.

2. Same — Diligence.— Three weeks before his trial the defendant sued out an attachment to B. county for a witness who, as he then alleged, resided in said county. The day before his trial he sued out another attachment for the same witness, and had it issued to T. county, where, as he then alleged, the witness resided. The application for a continuance to procure the testimony of said witness did not show at what time the defendant ascertained that the witness was a resident of the county to which he had his second attachment issued. *Held,* that the application does not show diligence, inasmuch as, for aught it discloses, the defendant may have known where his witness was to be found in time to have enforced his attendance at the trial.

Appeal from the District Court of Hunt. Tried below before the Hon. J. A. B. Putman.

The conviction in this case was for theft from the person of J. W. Dunn, of $15, in Hunt county, Texas, on the 10th day of Novem-

ber, 1884. The punishment assessed by the verdict was a term of seven years in the penitentiary.

J. W. Dunn was the State's first witness. He testified that he first saw the defendant at an auctioneer's stand in Greenville, Hunt county, Texas, on the 10th day of November, 1884. While the witness was standing near that stand, having just purchased some jewelry, the defendant stepped up to him and asked if the goods offered were being sold very cheap. Witness made him some reply which he did not now remember, and the defendant then asked him if he did not want to hire a boy for his board and clothes, adding that he had a boy for whom he had nothing to do. Witness replied that he would see the boy. He then asked witness to follow him and witness did so. Defendant went to the side of a livery stable and called to some one by name. He then sat down and took some whore house cards from his pocket. These he exhibited to the witness and said that whoever, in drawing from the package, should draw the card with the photograph of a woman on it, could sleep with one of the inmates of a house of prostitution, one night. About this time another negro approached and offered to bet the witness that witness could not draw the card with the woman's photograph. Witness declined to bet, but drew from the deck twice as a matter of fun. Defendant insisted that witness should bet with the other party, but witness declined and left. Witness went back to the front of the auctioneer's stand for the purpose of making some more purchases. He drew out his pocket-book and took $15 from it. Defendant followed witness, and, while witness so had the $15 in his hand, the defendant snatched it and ran off. The money was taken from his hands so suddenly by the defendant that witness had no time or opportunity to resist. Witness followed, but soon lost the defendant. This money was taken forcibly from the witness, without his consent, by the defendant, in Greenville, Hunt county, Texas, on the 10th day of November, 1884.

The town of Greenville was crowded with people on the day of the theft, there being a circus performance in town on that day. A large number of persons were standing around. Witness made no outcry when his money was snatched from him, nor did he relate the occurrence to any one until he found an officer. As soon as he could find them, he told Deputy Sheriffs William Whitmore and Belmont Ross, and gave them a description of the defendant. Witness, being in company with Whitmore, next saw the defendant with another negro on the streets. He told defendant to give him back his money. Defendant replied that he did not have the wit-

ness's money, but that the other negro with him had it. Whitmore then arrested the defendant. Witness recovered none of the money taken from him in the manner described. He did not bet with either of the negroes on the drawing of the cards or otherwise. He did not give the defendant the money to hold as stakes while he gambled with the other negro. From where he left the two negroes with the cards, he went back to the stand where the auctioneer was crying off goods. He had not bid on anything, nor had anything been knocked off to him when he took his money out, at which instant of time the defendant snatched the money and ran.

William Whitmore testified, for the State, that a circus being advertised to exhibit in Greenville, on the 10th day of November, 1884, he was appointed a special deputy sheriff for that day. He saw the defendant in Greenville on the morning of that day. About 11 o'clock on that morning, J. W. Dunn told the witness that a negro, whom he described, had snatched $15 from his hands and run off. Witness made search and found the defendant and another negro on the streets. Witness watched the two negroes until he was joined by Dunn. He then walked up to the negroes and began a conversation with them. About this time Dunn told witness that the defendant was the man who had his money. This the defendant denied, and pointing to the negro with him, said, "this man has your money." Witness then arrested the defendant and turned him over to Jailer Parker.

M. Parker, keeper of the Hunt county jail, next testified for the State. He first saw the defendant on or about November 10, 1884, when he was delivered to the witness by Special Deputy Sheriffs William Whitmore and Belmont Ross. Witness placed him in jail. On searching the defendant, witness found only a five-dollar greenback bill on his person.

Obe Chaffin testified that he was the assistant of the present jailer, Mr. Adair. Witness had seen the defendant with money since he had been in jail. He took the defendant out of jail on one occasion to make some purchases, and saw him change a ten-dollar bill in a saloon.

Henry Perkins testified that he was in the Hunt county jail with the defendant, and on one occasion saw him send out a ten-dollar bill to be changed. He never saw the defendant with any other money. The State closed.

Charley Williams was the first witness for the defense. He testified that he knew and saw the defendant in Greenville on the 10th day of November, 1884. He saw the witness J. W. Dunn on the

same day and at the same time. Dunn, defendant and Ed. Grigsby were sitting together near a livery stable. They had some cards, and Dunn and Grigsby were betting on some kind of a "draw" game. Defendant held the stakes, $15 each for Dunn and Grigsby. Dunn drew and lost, and defendant asked him what he should do with the money. Dunn told him to give it to Grigsby, as Grigsby had won. Witness had been posted by no one as to what he should swear in this case. Witness had been for some time in jail with defendant, and had talked over with him their respective cases, but had never intimated to any one what his testimony on this trial would be.

The motion for new trial raised the questions discussed in the opinion.

*B. F. Looney*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. One provision of our statute is that "the truth of the first or any subsequent application (for a continuance), as well as the merit of the ground set forth therein, and its sufficiency, shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right." (Code Crim. Proc., art. 560.) Its truth and merit may both be questioned and determined by the facts stated on the face of the application, just as the diligence may be. But, in assigning reasons why it was overruled, by way of explanation to the bill of exceptions saved to the ruling, no reason can be sound or should be stated which could only arise or be known from and after the other evidence elicited on the trial. An application acted upon in advance of the trial can, in the nature of things, only be determined from facts as they are then known. (*Pinckord* v. *The State*, 13 Texas Ct. App., 468.) Upon the motion for a new trial, and when the application is considered a second time in connection with the evidence, the court may then properly assign such additional grounds as to materiality and truth as the evidence authorizes; but the court evidently cannot know such facts in advance of the trial, and they can furnish no additional reason for the ruling on an application for continuance, in avoidance of the bill of exceptions reserved to the ruling. The object of an explanation or qualification of a bill of exceptions is to make plain the matter objected to, or give the reasons as they existed at the time of the ruling which caused the ruling to be made.

In this case several reasons for overruling appellant's application for a continuance are stated by the learned judge. Presumably he must have allowed and approved the bill after the trial, for some of the reasons are based upon facts as they "appeared from the evidence on the trial." But, these reasons aside, the ruling of the court was correct in so far as diligence was shown by said application. Sufficient diligence is not shown.

The indictment was filed January the 9th, 1885. Defendant was served with a copy on January the 10th, and on the 14th he applied for an attachment for the witness Grigsby, to Bowie county, stating that the witness resided in Bowie county. On the 4th of February, the day before the trial, the defendant applied for and obtained another attachment for his witness Grigsby, alleging that he resided in Tarrant county. His application does not show when he learned that his witness was a resident of Tarrant and not of Bowie county. He might, for aught that appears, have known the fact in ample time after his first attachment, issued to Bowie, to have enabled him by proper diligence to have had the witness served and in attendance at the trial.

There is no merit in any of the other matters complained of, and the judgment is affirmed.

*Affirmed.*

[Opinion delivered April 29, 1885.]